**GTE NEW MEDIA SERVICES
INCORPORATED,**
Appellee,

v.

**BELLSOUTH CORPORATION,**
et al., Appellants.

No. 99–7097.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 17, 1999.

Decided Jan. 11, 2000.

Charles Rothfeld argued the cause for appellants. With him on the briefs were Richard J. Favretto, Andrew J. Morris and Miriam R. Nemetz.

Thomas A. Isaacson argued the cause for appellee. With him on the brief were Robert F. Ruyak and Alan M. Wiseman. Kenneth W. Brothers, Mark C. Hansen, Stephen A. Weisbrod and Glenn B. Manishin entered appearances.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

The matter at hand involves an interlocutory appeal brought pursuant to 28 U.S.C. § 1292(b). The issues presented are whether the District Court may assert personal jurisdiction over the defendants and whether venue is proper in the District of Columbia ("District") when the defendants' sole contact with this forum is the operation of Internet websites that are accessible to persons in the District. The District Court tentatively concluded that the quality and nature of the websites militated in favor of personal jurisdiction. The trial judge noted, however, that "[a]ll of the interactive website cases reviewed [by the District Court] involved defendants with at least some physical contact with the forum," whereas the defendants in this case have no physical contact with the forum. *GTE New Media Servs., Inc. v. Ameritech Corp.*, Order Certifying for Interlocutory Appeal the Court's Ruling That Personal Jurisdiction Exists and Staying Proceedings at 3, *reprinted in* J.A. 218. Given the unusual circumstances of this case, the District Court determined that the questions of personal jurisdiction and venue should be certified for immediate review by this court.

The underlying action in this case rests on a complaint by GTE Media Services, Inc. ("GTE") against various defendants, including BellSouth Corp., BellSouth Enterprises, Inc., BellSouth Advertising & Publishing Corp., Intelligent Media Ventures, Inc., SBC Communications Inc., Pacific Telesis Group, Pacific Bell Interactive Media, U.S. West, Inc., and U.S. West Media Group, for alleged violations of Sections 1 and 2 of the Sherman Antitrust Act. GTE contends that the defendants engaged in a conspiracy with an illicit purpose to dominate the Internet business directories' market. The defendants, in turn, moved to dismiss the complaint for want of personal jurisdiction. The defendants argue that the mere ability of District residents to access the defendants' Internet Yellow Pages from locations within the city is insufficient to establish personal jurisdiction.

GTE contends that the action, tortious injury, and "persistent course of conduct" required under the District's long-arm statute are established, because the defendants have entered into an agreement outside of the District with a purpose of causing Internet users in the District to use the defendants' Internet links to pursue business leads in the District. In other words, GTE asserts that the alleged conspiracy was designed to cause Internet users who otherwise would have had access to GTE's links to be diverted to the defendants' links, which in turn resulted in more advertising revenue for the defendants. GTE argues, in the alternative, that Section 12 of the Clayton Act provides an independent basis for personal jurisdiction.

On the record at hand, we hold that the District Court erred in concluding that there is sufficient evidence here to support personal jurisdiction. And GTE's tortured interpretation of Section 12 of the Clayton Act cannot save the day. However, at this juncture of the case, GTE is still free to supplement the record through jurisdictional discovery. The case is hereby remanded to the District Court for further proceedings, including additional discovery and possible amendments to the complaint, should that be deemed warranted. We decline to pass upon the District Court's theory of jurisdiction, which is premised on the supposed existence of certain facts to

show substantial effects, when we have no way of knowing whether there are indeed facts to support the asserted theory. And we reject GTE's theory of jurisdiction, which appears to rest on a view that mere accessibility to an Internet site in the District is enough of a foundation upon which to base personal jurisdiction.

## I. BACKGROUND

The relevant facts are relatively simple. GTE alleges that in July 1997, five regional Bell operating companies (Ameritech Corp., Bell Atlantic, BellSouth, SBC Corp., U.S. West) and their relevant subsidiaries conspired to capture, control, and dominate the Internet business directories' market. *See GTE New Media Servs. Inc. v. Ameritech Corp.*, 97–CV–2314, Mem. Op. at 5–6, *reprinted in* Joint Appendix ("J.A.") 185–86. After the alleged conspirators held meetings in California, Colorado, Georgia, and Michigan, they agreed to provide jointly a coded map of the United States that would allow users of their Internet Yellow Pages to access particular states and particular businesses. Each of the regional Bell operating companies would provide exclusive service to a particular region, and the other companies apparently agreed not to compete with the designated exclusive server in its given region. The regions designated to each regional Bell operating company corresponded to the region to which the company provided telecommunications service. *See id.* at 5, *reprinted in* J.A. 185. The regional Bell operating companies' next step was to obtain exclusive links for their map on well-known Internet browser sites run by Netscape Communications Corp. ("Netscape") and Yahoo, Inc! ("Yahoo"), to ensure that users of these popular sites would be specifically directed to the operating companies' Internet Yellow Pages.

Before the alleged conspiracy, GTE had a non-exclusive contract with Netscape, pursuant to which Netscape offered a choice of Internet business directories on its site, including GTE's SuperPages. *See id.* at 7, *reprinted in* J.A. 187. When users accessed the "Yellow Pages" option on Netscape's toolbar, they had access to GTE's website. GTE asserts, however, that Netscape terminated this arrangement on July 18, 1997, by removing its links to GTE's SuperPages, including hyperlinks on Yahoo.

On October 6, 1997, GTE filed its complaint against the five regional Bell operating companies, Netscape, and Yahoo, claiming, among other things, violations of Sections 1 and 2 of the Sherman Antitrust Act. Several defendants (*i.e.*, BellSouth, SBC Corp. and U.S. West, excepting U.S. West Dex, Inc.) moved to dismiss the complaint for lack of personal jurisdiction; two (*i.e.*, BellSouth and SBC Corp.) also argued that venue was improper in the District of Columbia. On September 28, 1998, the District Court denied both motions to dismiss, finding that (1) the court had personal jurisdiction under section 13–423(a)(4) of the D.C. long-arm statute, because GTE had sufficiently alleged a tortious injury in the District caused by the defendants' acts outside of the District; and (2) because venue is proper under 28 U.S.C. § 1391 wherever a party is subject to personal jurisdiction, the finding of personal jurisdiction also resolved the venue question. On March 29, 1999, however, the District Court certified an order for interlocutory appeal and ordered a stay of proceedings. The District Court noted that, although it had found that the defendants operated an interactive website that supported a finding of personal jurisdiction,

the instant case differs from any other reported case ... in that it involves an interactive website *with no other contacts with the District of Columbia.* All of the interactive website cases reviewed by this court involved defendants with at least some physical contact with the forum. While this court has concluded that the quality and nature of the [operating companies'] website favors the exercise of personal jurisdiction in the Dis-

trict of Columbia, certainly a substantial ground for difference of opinion concerning the ruling exists.

*GTE New Media Servs. Inc.*, Order Certifying for Interlocutory Appeal the Court's Ruling That Personal Jurisdiction Exists and Staying Proceedings at 3, *reprinted in* J.A. 218 (emphasis added). On April 8, 1999, the defendants filed a petition for permission to appeal. This court entered an order granting permission to appeal on May 28, 1999.

## II. DISCUSSION

*A. The District of Columbia Long–Arm Statute and the Due Process Clause of the U.S. Constitution*

■ To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process. *See United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir. 1995).

The District's long-arm statute provides, in relevant part, that

[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—(1) transacting any business in the District of Columbia; ... (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C.CODE ANN. § 13–423(a) (1981). A plaintiff seeking to establish jurisdiction over a non-resident under the foregoing provisions of the long-arm statute must demonstrate, pursuant to section (a)(1), that the plaintiff transacted business in the

District, or show, pursuant to section (a)(4), that the plaintiff caused a tortious injury in the District, the injury was caused by the defendant's act or omission outside of the District, and the defendant had one of the three enumerated contacts with the District. Section (a)(1)'s "transacting any business" clause generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry. *See Ferrara*, 54 F.3d at 828. Section (a)(4) has been construed more narrowly, however. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987) ("The drafters of this provision apparently intended that the (a)(4) subsection would not occupy all of the constitutionally available space.... This court has explicitly noted, moreover, that (a)(4) of the D.C. long-arm statute may indeed stop short of the outer limit of the constitutional space.").

■ Even when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause. In other words, a plaintiff must show "minimum contacts" between the defendant and the forum establishing that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). Under the "minimum contracts" standard, courts must insure that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Cases applying the familiar personal jurisdiction analysis to the Internet are thus far relatively scarce; only the Second, Fifth, Sixth, and Ninth Circuits have ventured into this domain. Three decisions among the five issued by these four appel-

late courts have dismissed complaints for want of personal jurisdiction.

In *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 29 (2d Cir.1997), for example, the Second Circuit found that the operator of a Missouri jazz club named "The Blue Note" did not commit tortious acts in New York within the meaning of New York's long-arm statute when he established an Internet website for his club that contained a hyperlink to a New York club of the same name. The court held that, because the Missouri club operator should not have reasonably expected his allegedly tortious acts to have consequences in New York and because he did not significantly engage in interstate commerce, it would not extend long-arm jurisdiction under another subsection of the long-arm statute.

Similarly, in *Mink v. AAAA Development LLC,* 190 F.3d 333, 336–37 (5th Cir. 1999), the Fifth Circuit declined to find personal jurisdiction in a case in which the developer of a computer software program brought an action against purported competitors and sought to rest personal jurisdiction on a finding that the defendant operated an Internet website that was accessible by residents in the forum state. The court reasoned that "[t]here was no evidence that [the defendant] conducted business over the Internet by engaging in business transactions with forum residents or by entering into contracts over the Internet." *Id.* at 337. Thus, although the defendant's website had an e-mail address that allowed consumers to interact with the company, the court noted that "[t]here is no evidence ... that the website allows [the defendant] to do anything but reply to e-mail initiated by website visitors." *Id.* The court also noted that the website was not interactive enough to support a finding of jurisdiction, because customers could not purchase anything on-line. *See id.*

Finally, in *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419–20 (9th Cir.1997), the Ninth Circuit declined to find personal jurisdiction in an infringement action in Arizona against a Florida corporation that provided consulting services for strategic management on the web and used the same name as the plaintiff's corporation. The court found that the challenged web page was essentially passive. The court found that there was "no question that anyone, anywhere could access that home page and thereby learn about the services offered," but it failed to "see how from that fact alone it can be inferred that [the defendant] deliberately directed its merchandising efforts toward Arizona residents." *Id.* at 419. In addition, the court noted that because the defendant did not encourage people in Arizona to access its sites and there was no evidence that any part of the defendant's business was sought or achieved in Arizona—in fact, no Arizona resident other than the plaintiff had ever "hit" the defendant's site—there was no purposeful availment and thus no personal jurisdiction. *See id.*

The two decisions in which appellate courts have found personal jurisdiction in cases involving Internet-related disputes present facts that are quite different from those in the instant case. In *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir.1996), for example, the Sixth Circuit found personal jurisdiction over a defendant in Ohio, because the defendant had entered into a contract that allowed him to market his software in other states with Ohio-based CompuServe acting as his distributor. The court concluded that it was reasonable to subject the defendant to suit in Ohio, because it was home to the computer network service that he himself had chosen to employ. The court also determined that the defendant was on notice that he had created a connection with Ohio, because (1) he had entered into contracts that would be governed by Ohio law with an Ohio-based company; and (2) he sent his software, via electronic links, to Ohio and advertised his products on CompuServe. The court highlighted that "it is Patterson's relationship with *CompuServe* as a software provider and marketer that is crucial to this case." *Id.* at 1264. In

this case, however, GTE has yet to offer evidence of either a contractual relationship or a comparable marker of activity directed uniquely toward the District.

Likewise, in *Panavision International, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998), the Ninth Circuit upheld personal jurisdiction in a case involving a "cyberpirate" (*i.e.,* someone who steals valuable trademarks, establishes domain names on the Internet using the trademarks, and then offers to sell the domain names back to the rightful trademark owners), *see id.* at 1318, by employing the "effects doctrine," which holds that "jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state." *Id.* at 1321. The court concluded that "[t]he brunt of the harm to Panavision was felt in California," given that Panavision's principal place of business was in California and "the heart of the theatrical motion picture and television industry is located there." *Id.* In the instant case, unlike *Panavision,* there is nothing as yet to indicate that the defendants engaged in unabashedly malignant actions directed at or felt in this forum.

The District Court in this case asserted personal jurisdiction, pursuant to D.C.Code Ann. § 13–423(a)(4), on the ground that the defendants allegedly caused tortious injury in the District by an act outside the District followed by a persistent course of conduct in the District. Under this theory of jurisdiction, it does not matter that the defendants have no demonstrated physical contacts in the District. Rather, it is enough, according to the District Court, that the defendants entered into an agreement outside of the District with an eye toward attracting Internet users in the District to their websites (instead of to GTE's SuperPages) and thereby draw advertisers away from GTE. The District Court found that, on these asserted facts alone, the defendants foreseeably caused tortious injury to GTE's business in this forum. *See Ameritech Corp.,* Mem. Op. at 10, *reprinted in* J.A.

190. The defendants' course of conduct was seen to be "persistent" by the District Court, because their websites are "highly interactive" with District users and significantly commercial in both quality and nature. *Id.* at 11–12, *reprinted* at J.A. 191–92. We disagree with this line of reasoning.

There is no evidence in this record to support the claim that the defendants "secured advertising revenue by increasing the user traffic on their websites." *Id.* at 13, *reprinted at* J.A. 193. At best, GTE has provided only conclusory statements and intimations to buttress its assertion that it lost advertising revenues as a result of the defendants' actions. These are not enough. *Cf. First Chicago Int'l v. United Exchange Co.,* 836 F.2d 1375, 1378–79 (D.C.Cir.1988) ("Conclusory statements ... '[do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction.' ... [T]he 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction." (citation omitted)). We will neither assume nor infer that the alleged conspiracy had *substantial effects* of the sort alleged by GTE, because to do so would be to assume or infer the answer to the very question that is before us.

Furthermore, it is difficult to understand, at least on the present record, what tortious injury has been suffered by GTE *in the District.* GTE claims that it has lost advertising revenues by virtue of the defendants' allegedly unlawful conspiracy. However, nothing has been offered to indicate that these advertising revenues were lost in the District, either by lost sales or lost revenue collections.

Additionally, personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District. Access to a website reflects nothing more than a telephone call by a District resident to the

**1350**

defendants' computer servers, all of which apparently are operated outside of the District. And, as this court has held, mere receipt of telephone calls outside the District does not constitute persistent conduct "in the District" within the meaning of the long-arm statute. *See Tavoulareas v. Comnas,* 720 F.2d 192, 194 (D.C.Cir.1983).

■ Finally, GTE appears to suggest that, when a District resident accesses the defendants' Yellow Pages websites, the defendants are somehow "transacting business" in the District. This is a far-fetched claim on this record. Access to an Internet Yellow Page site is akin to searching a telephone book—the consumer pays nothing to use the search tool, and any resulting business transaction is between the consumer and a business found in the Yellow Pages, not between the consumer and the provider of the Yellow Pages. In short, there is nothing here to indicate that District residents actually engage in any business transactions with the defendants.

■ When stripped to its core, GTE's theory of jurisdiction rests on the claim that, because the defendants have acted to maximize usage of their websites in the District, mere accessibility of the defendants' websites establishes the necessary "minimum contacts" with this forum. *See* Br. for Appellee at 16. This theory simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559. In the context of the Internet, GTE's expansive theory of personal jurisdiction would shred these

constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we.

**B. The Clayton Act**

■ GTE asserts an alternative basis for personal jurisdiction, resting on Section 12 of the Clayton Act, 15 U.S.C. § 22 (1994). Section 12 provides:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process *in such cases* may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (emphasis added). The language of the statute is plain, and its meaning seems clear: The clause before the semi-colon relates to a supplemental basis for venue in actions under the Clayton Act; the clause after the semi-colon relates to nationwide service of process in antitrust cases; and invocation of the nationwide service clause rests on satisfying the venue provision.

Although both parties agree that the clause regarding nationwide service also confers nationwide jurisdiction, they disagree over whether the venue clause must be satisfied for there to be nationwide personal jurisdiction over defendants in antitrust cases. The defendants argue that "[p]roper venue under Section 12 is ... a prerequisite for nationwide service (and jurisdiction): [I]f venue does not lie under the provision, nationwide service is impermissible." *See* Reply Br. of Appellants at 22. GTE contends that compliance with Section 12's venue provision is not a prerequisite for use of its national jurisdiction provision. More specifically, GTE argues that venue may be obtained under either Section 12 or under the general federal venue provision of 28 U.S.C. § 1391, and that use of either route allows

resort to Section 12's national jurisdiction provision.

GTE relies on *Go-Video, Inc. v. Akai Electric Co.*, 885 F.2d 1406 (9th Cir.1989), to buttress its position. In *Go-Video*, the Ninth Circuit rejected the argument that Section 12 must be read as an "integrated whole," even though the reference to serving process "in such cases" clearly seems to require that the preceding clause's venue requirements be established before nationwide service can be authorized. The court reasoned that "as a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes." *Id.* at 1409. Under this analysis, an interpretation of Section 12 that viewed the first clause as restricting the second clause would contradict the general view of Section 12 as expanding the bounds of venue. We disagree with the reasoning of the Ninth Circuit.

The desire to view Section 12's venue provision as expansive does not justify the Ninth Circuit's total disregard of the first clause, particularly given the literal convolutions required to jettison the first clause. Indeed, it seems quite unreasonable to presume that Congress would intentionally craft a two-pronged provision with a superfluous first clause, ostensibly link the two provisions with the "in such cases" language, but nonetheless fail to indicate clearly anywhere that it intended the first clause to be disposable. Even the Ninth Circuit seems to recognize that its sweeping interpretation of Section 12 tends to make the venue provision "wholly redundant." *Id.* at 1413.

On the question of the meaning of Section 12, we align ourselves with the position taken by the Second Circuit. *See Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 581 (2d Cir.1961), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). The court in *Goldlawr* reasoned that Section 12

> specifies where suit against a corporation under the antitrust laws may be brought, namely, in a district where it is an inhabitant and also where 'it may be found or transacts business.' Conversely, it should follow that if a corporation is not an inhabitant of, is not found in, and does not transact business in, the district, suit may not be so brought. By statutory grant if suit is brought as prescribed in this section 'all process in such cases may be served in the district of which it [the corporation] is an inhabitant, or wherever it may be found.' Thus, 'in such cases,' Congress has seen fit to enlarge the limits of the otherwise restricted territorial areas of process. In other words, the extraterritorial service privilege is given only when the other requirements are satisfied.

*Id.*

In our view, the Second Circuit's unadorned interpretation of Section 12 is clearly correct. *See also* Herbert Hovenkamp, *Personal Jurisdiction and Venue in Private Antitrust Actions in the Federal Courts*, 67 IOWA L.REV. 485, 509 (1982) ("A better approach is to interpret section 12 the way it is written. Worldwide service is proper only when the action is brought in the district where the defendant resides, is found, or transacts business."). A party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both of its clauses. To read the statute otherwise would be to ignore its plain meaning. Thus, because GTE has not shown that the defendants were inhabitants of, may be found in, or transacted business in the District, as required by Section 12's first clause, it cannot avail itself of Section 12's second clause.

## C. Jurisdictional Discovery

■ Finally, GTE contends that if, on the existing record, there are insufficient grounds to support personal jurisdiction, it is still entitled to jurisdictional discovery. We agree. This court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified. *See Crane*, 814 F.2d at 760 (vacating, in part, the District Court's

judgment, because "Crane's case was dismissed with no opportunity for discovery on the issue of personal jurisdiction").

Such is the case here. The record now before this court is plainly inadequate. We do not even know for certain which defendants own and operate which websites. Even the parties at oral argument agreed that the jurisdictional questions at issue are quite different for some defendants as opposed to others. And, as the record now stands, there is absolutely no merit to GTE's bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically. Jurisdictional discovery will help to sort out these matters. GTE also claims that it may be able to present new facts to bolster the District Court's theory of "substantial effects" within the District. We cannot tell whether jurisdictional discovery will assist GTE on this score, but it is entitled to pursue precisely focused discovery aimed at addressing matters relating to personal jurisdiction.

### III. CONCLUSION

For the foregoing reasons, the case is hereby remanded to the District Court for further proceedings.