**In re VITAMINS ANTITRUST LITIGATION.**

**This Document Relates To All Actions.**

**No. 99–197 TFH.**

United States District Court,
District of Columbia.

March 27, 2000.

*MEMORANDUM OPINION—*
*Re: Personal Jurisdiction*

THOMAS F. HOGAN, District Judge.

Pending before the Court are the motions of defendants Rhone–Poulenc S.A. ("RPSA"), BASF Aktiengesellschaft ("BASF AG"), and F. Hoffman–La Roche Ltd. ("Roche Ltd")[1] to dismiss the *Cargill, Inc., et al. v. F. Hoffman–La Roche, et al.*, action for lack of personal jurisdiction. Also pending are numerous motions by other defendants in the Vitamins Antitrust Litigation for determination of the governing law on the question of personal jurisdiction under the Clayton Act, *i.e.* whether the test is one of national or local contacts.[2] After careful consideration of all briefs filed with regard to this issue as well as the arguments presented at the March 16, 2000 hearing and the governing caselaw on this issue, the Court finds that it is bound by the D.C. Circuit's ruling in *GTE New Media Services, Inc. v. BellSouth Corp., et al.*, 199 F.3d 1343 (D.C.Cir.2000)[3]

1. RPSA, BASF AG, and Roche Ltd are all alien corporations (incorporated under the laws of France, Germany, and Switzerland respectively).

2. This Court had previously adopted a national contacts test for personal jurisdiction under Section 12 of the Clayton Act. However, in light of the D.C. Circuit's January 11, 2000 opinion in *GTE New Media Services, Inc. v. BellSouth Corp., et al.*, 199 F.3d 1343 (D.C.Cir.2000) (holding that a local contacts inquiry is required under the Clayton Act), the Court has been asked to reconsider its position. Many of the parties in this antitrust action have signed stipulations, which have been approved by this Court, to brief only the personal jurisdiction issue at this time and to delay all other briefing until after the Court's decision on this threshold issue.

3. In *GTE*, the D.C. Circuit held that the language of Section 12 of the Clayton Act that allows for worldwide service of process only "in such cases" means that the process provisions may be used only in those cases in

. Due to this change in the governing law, the Court holds that plaintiffs are entitled to additional jurisdictional discovery aimed at addressing matters relating to the defendants' local contacts with the forum states.

## I. BACKGROUND

The Vitamins Antitrust Litigation involves allegations of a worldwide conspiracy to fix prices and allocate market shares of vitamins, vitamin premixes, and other bulk vitamin products from 1989 to the present. Three alien defendants—RPSA, BASF AG, and Roche Ltd—seek dismissal of the *Cargill* action[4] because of a claimed lack of jurisdiction over them. The Court finds this assertion of lack of personal jurisdiction highly suspect in light of the representations made by these defendants to the government. In May of 1999, Roche Ltd and BASF AG pled guilty in the United States District Court for the Northern District of Texas to criminal antitrust violations and expressly admitted participating (with RPSA and others) for the past decades in the very same conspiracy charged here. *See* Affidavit of John F. Kinney ¶¶ 22–27; Plaintiffs Exhibits R & V (Plea Agreements of Roche Ltd and BASF AG, respectively). Notably, the Roche Ltd and BASF AG Plea Agreements specifically refer to civil damage actions as the reason these defendants were not required to make restitution as part of their guilty pleas. *See* Kinney Aff. ¶ 24; Plaintiffs' Exhibits R & V. RPSA escaped criminal prosecution only by admitting its own participation and cooperating against the other two defendants. Similarly, providing restitution is one of the prerequisites for the immunity that RPSA sought and received under the Justice Department's corporate leniency program. *See* DOJ Corporate Leniency Policy ¶¶ A(5), B(6) (Aug. 10, 1993). Therefore, there is little question that these three defendants are subject to jurisdiction somewhere in the United States.[5] Unfortunately, due to this Circuit's recent opinion in *GTE* and the defendants' insistence that they are not subject to personal jurisdiction in this Court, the Court is forced to subject the parties to more expense and delay in resolving the question of which forum has personal jurisdiction over these alien defendants.

## II. DISCUSSION

Pursuant to Fed.R.Civ.P. 12(b)(2), defendants RPSA, BASF AG, and Roche Ltd. seek dismissal of the *Cargill* action

which the entire initial venue provision has been satisfied; under this reading, worldwide service of process is authorized only after the Court finds that the defendants are inhabitants of, may be found in or transact business in the forum in which the complaint was filed. This Court questions whether the holding of *GTE* comports with the goals of the antitrust laws and the practice of consolidating pretrial proceedings for multidistrict litigation. *See Paper Systems Inc. v. Mitsubishi Corp.*, 967 F.Supp. 364, 366–68 (E.D.Wis. 1997) (noting that "antitrust cases, especially those involving aliens, may pose problems for any one district court to obtain jurisdiction over all the defendants, if left to state long-arm statutes.... If the antitrust laws are to be effective, district courts' jurisdiction must reach the limits of the power of the United States of America. In the case of antitrust laws, it makes no sense to tie a district court's jurisdiction to the state in which it sits; it neither promotes the enforcement of antitrust laws nor the management of litigation.").

4. The *Cargill* complaint was originally filed in the United States District Court for the Northern District of Illinois on August 9, 1999, and was transferred by the Judicial Panel on Multi–District Litigation to this Court for coordinated pretrial proceedings on September 10, 1999. Plaintiffs in the *Cargill* case include Cargill, Inc., Agribrands International, Inc., The Iams Co., and Akey, Inc., along with their subsidiaries and affiliates that purchased vitamins products for delivery in the United States and elsewhere.

5. This is true even if defendants are not subject to personal jurisdiction under any state's long-arm statute; Fed.R.Civ.P. 4(k)(2) allows a district court to acquire jurisdiction over a foreign defendant which has insufficient contacts with any single state but has "contacts with the United States as a whole...." Advisory Comm. Note to 1993 Amendment.

for lack of personal jurisdiction. Plaintiffs offer three statutory bases for jurisdiction in this case: (1) Section 12 of the Clayton Act, (2) the Illinois long-arm statute, and (3) Fed.R.Civ.P. 4(k)(2).

**A. Section 12 of the Clayton Act**

The first issue which this Court must resolve is whether Section 12 of the Clayton Act supports a national or a local contacts test for establishing jurisdiction.[6] Section 12 of the Clayton Act provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." Plaintiffs argue that Section 12 authorizes worldwide service of process in all antitrust proceedings because the language authorizing worldwide service of process "in such cases" refers back to the earlier phrase "[a]ny suit, action, or proceeding under the antitrust laws." Defendants, on the other hand, contend that the language of Section 12 that allows worldwide service of process only "in such cases" means that the process provisions may be used only in those cases in which the entire initial venue provision has been satisfied.

On July 29, 1999, this Court issued an opinion, agreeing with the Ninth Circuit's opinion in *Go-Video Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir.1989) (holding that Section 12 should be read to expand, rather than limit, the bounds of venue) and concluding that "pursuant to Section 12 of the Clayton Act, the relevant forum on which to analyze Defendants' contacts is the United States as a whole." *In Re Vitamin Antitrust Litig.*, Misc. No. 99-197(TFH), MDL No. 1285, 1999 WL 728100, * 3 (D.D.C. July 29, 1999). However, the Court must now revisit this issue in light of the D.C. Circuit's recent opinion in *GTE* in which this Circuit explicitly rejected *Go-Video* and held that "invocation of the nationwide service clause [of Section 12] rests on satisfying the [Act's] venue provision." *GTE*, 199 F.3d at 1350.

Plaintiffs offer several arguments that attempt to distinguish this case from *GTE*. First, plaintiffs argue that *GTE*'s local contacts test applies only to domestic corporations and is thus inapposite to this case. However, there is no language in *GTE* to support this distinction. In fact, the word "domestic" does not appear anywhere in the court's opinion. Moreover, the *GTE* court flatly rejected *Go-Video*, a case which did involve foreign defendants. If the D.C. Circuit did not intend to bind plaintiffs suing alien corporations, the Court could simply have distinguished *Go-Video* as inapposite since *Go-Video* involved foreign corporations and *GTE* involved only domestic defendants. Since *GTE* places no emphasis on the defendants' United States residence and since there is no language in the opinion which could be interpreted to carve out an exception for suits against foreign defendants, there is no basis for distinguishing *GTE* from the Vitamins Antitrust Litigation on this ground.

Second, plaintiffs argue that GTE is inapposite to the Vitamins Antitrust Litigation because *GTE* is an Internet case. The Court agrees with plaintiffs that the *GTE* court may have been influenced by the unique nature of the Internet and the special dangers posed by allowing plaintiffs to sue defendants anywhere based upon access to an Internet site. Unfortunately, however, the *GTE* court did not limit their opinion to the facts of that case. Since both the appellee's brief and the appellants' reply in *GTE* mention this Court's July 29, 1999 opinion in the Vitamins Antitrust Litigation[7], the Court must

6. At the February 16, 2000 status conference, counsel agreed to present *Cargill* as the lead case on this issue since it was the first to become fully briefed. Our decision on the national versus local contacts issue in this case will bind all parties in the antitrust action.

7. *See GTE* Brief for Appellee at 35 and *GTE* Reply Brief for Appellants at 24 n. 10.

assume that the D.C. Circuit was aware of this Court's decision on personal jurisdiction over alien defendants under the Clayton Act. Although this Court is greatly concerned with the effect of a local contacts test on the consolidation and management of multidistrict litigation, it is bound by this Circuit's statutory analysis of the Clayton Act and its clear rejection of the *Go–Video* approach in *GTE.*[8]

Plaintiffs further argue that the Clayton Act's venue provision is wholly inapplicable to aliens, because 28 U.S.C. § 1391(d) ("An alien may be sued in any district.") mandates that aliens cannot invoke any venue restrictions. Plaintiffs contend that *GTE* did not alter this presumption because *GTE* involved only domestic defendants and thus considered only 28 U.S.C. § 1391(b) and (c), not 28 U.S.C. § 1391(d). This Court disagrees. In *GTE,* the D.C. Circuit explicitly held that an antitrust plaintiff relying on the worldwide service of process provisions of Section 12 of the Clayton Act must also meet the venue provisions of that statute. *GTE,* 199 F.3d at 1351. This Circuit explicitly rejected the Ninth Circuit's holding in *Go–Video* that a plaintiff could rely on alternate bases for venue after resort to Section 12's authorization for extraterritorial service. Instead, the D.C. Circuit held that "[a] party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both of its clauses." *GTE,* 199 F.3d at 1351. Therefore, the Court sees no merit in plaintiffs' argument that although an antitrust plaintiff cannot use the venue provisions of 28 U.S.C. § 1391(b) and (c) when relying on the Clayton Act's worldwide service of process provision, such a plaintiff could use the venue provision of 28 U.S.C. § 1391(d) when relying on that same service provision. Under *GTE,* the liberal service of process provision of the Clayton Act is applicable only to plaintiffs who also satisfy that statute's venue provision. *GTE,* 199 F.3d at 1351.

Plaintiffs' reliance on *Brunette Machine Works, Ltd. v. Kockum Indus. Inc.,* 406 U.S. 706, 708, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972) is also misplaced. *Brunette* did not involve personal jurisdiction, but rather proper venue once valid service of process had been made. *See Brunette,* 406 U.S. at 708, 92 S.Ct. 1936 (noting that "*subject only to the requirements of service of process,*" venue restrictions did not apply to foreign defendants and such defendants could be tried in any district) (emphasis added); *Weinstein v. Norman M. Morris Corp.,* 432 F.Supp. 337, 339 (E.D.Mich.1977) ("the issue before the Court in *Brunette* was the propriety of venue in a suit involving an alien where valid service of process could be effected in the forum. The holding of the Court was not that Sec. 1391(d) authorized personal jurisdiction over aliens by any district court, but rather that venue would be proper in any district where valid service of process (pursuant to a state long-arm or a federal jurisdictional statute) could be effected on the alien."); *see also Mylan Labs., Inc. v. Akzo, N.V.,* 1990 WL 58466, at *7 n. 20 (D.D.C. March 27, 1990) (citing *Weinstein* and recognizing that, in a case involving Clayton Act claims, 28 U.S.C. § 1391(d) "does not establish personal jurisdiction in any Federal District Court. Instead, alien corporations may be sued in any district where valid service of process can be made against the alien corporation."). *GTE* limits choice of venue when Section 12's service provision is used as a basis for personal jurisdiction, whereas *Brunette* addresses the choice of venue where valid service already has been made. *Brunette* is thus inapplicable here.

Plaintiffs assert that requiring adherence to both clauses of Section 12 is inconsistent with a view that special venue provisions should "supplement, rather than preempt, general venue statutes." *GTE,* 199 F.3d at 1351 (quoting *Go–Video,* 885 F.2d at 1409). However, the D.C. Circuit

8. The split in the Circuits may ultimately be resolved by the Supreme Court. However, in the meantime, this Court is bound by the law of its own Circuit.

explicitly rejected this argument in *GTE. Id.* ("The desire to view Section 12's venue provision as expansive does not justify the Ninth Circuit's total disregard of the first clause, particularly given the literal convulsions required to jettison the first clause.... A party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both of its clauses. To read the statute otherwise would be to ignore its plain meaning.")

The Court recently received, and seriously considered, plaintiffs' supplemental authority in opposition to alien defendants' motions to dismiss, which directed the Court's attention to the March 21, 2000 opinion by the United States Supreme Court in *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* — U.S. —, 120 S.Ct. 1331, — L.Ed.2d — (2000).[9] In that decision, the Supreme Court unanimously reversed the Eleventh Circuit's holding that under the Federal Arbitration Act, motions to confirm, vacate, or modify arbitration awards could be brought only in the district where the arbitration award was made. *Id.* The Supreme Court refused to adopt a restrictive venue interpretation, stating that "Congress does not in general intend to create venue gaps, which take away with one hand what Congress had given by way of jurisdictional grant with the other. Thus in construing venue statutes, it is reasonable to prefer the construction that avoids leaving such a gap." *Id.* (plaintiffs' attachment p. 5). While this Court agrees with the Supreme Court's line of reasoning in *Cortez,* this Court cannot, on the basis of the Supreme Court's decision on the reach of the venue provisions of the Federal Arbitration Act, decline to follow the current state of the law in this Circuit with regard to the venue provision of Section 12 of the Clayton Act. The two statutes are simply not identical and thus could conceivably be treated differently. *See id.* ("analysis of special venue provisions must be specific to the statute.") Therefore, because plaintiffs rely on the Clayton Act as an authorization of service, this Court must follow the D.C. Circuit's holding that defendants may properly be sued only in those districts in which they reside, are found or transact business. *GTE,* 199 F.3d at 1351.

Finally, Plaintiffs argue that applying the venue provision of the Clayton Act to aliens would conflict with the new federal long-arm provision created by Fed. R.Civ.P. 4(k)(2). Rule 4(k)(2) provides that to the extent consistent with the Constitution, service of process is effective, with respect to federal question cases, "to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state." Rule 4(k)(2) allows a district court to acquire jurisdiction over a foreign defendant which has insufficient contacts with any single state but has "contacts with the United States as a whole...." Advisory Comm. Note to 1993 Amendment. The Court finds no fundamental inconsistency between Rule 4(k)(2) and the D.C. Circuit's ruling in *GTE,* because Rule 4(k)(2) is simply a last-resort provision for establishing jurisdiction over alien defendants who would otherwise not be subject to the jurisdiction of any Court.

### B. The Illinois Long–Arm Statute

Since the D.C. Circuit has held that a local contacts inquiry is required under Section 12 of the Clayton Act, this Court must determine whether it can properly exercise jurisdiction over these alien defendants under the applicable state long-arm statute. Fed.R.Civ.P. 4(k)(1) provides: "Service of a summons... is effective to establish jurisdiction of a court of general jurisdiction in the state in which the district court is located." Rule 4(k)(1)(A) incorporates states' long-arm

9. Tyson, et al. and Nutra–Blend L.L.C.'s joint opposition to the motions to dismiss of Eisai Co., Ltd., Takeda Chemical Industries, Ltd., and Daiichi Pharmaceutical Co., Ltd. also focused on this recent Supreme Court opinion and was similarly taken into consideration by the Court in reaching a decision in this case.

statutes. *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105–108, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (interpreting former Rules 4(e) and (f)); Adv. Comm. Note to 1993 Amendments (the revised rule "retains the substance of the former rule in explicitly authorizing the exercise of personal jurisdiction over persons who can be reached under state long-arm" statutes). Because the *Cargill* action was filed in the Northern District of Illinois, the Illinois long-arm statute applies.

The Illinois long-arm statute, contained in Section 5/2–209 of the Illinois Code of Civil Procedure, 735 ILCS 5/2–209, provides in relevant part:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
>
> (1) The transaction of any business within the State.
>
> (2) The commission of a tortious act within this State.
>
> (b) A court may exercise jurisdiction in any action arising within or without this State against any person who:
>
> * * * * * *
>
> (4) Is a natural person or a corporation doing business within this State.
>
> (c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

Section (c) was added to make the reach of the statute co-extensive with minimum due process requirements. *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 (7th Cir.1990). Therefore, if there are sufficient minimum contacts, an Illinois court has jurisdiction under this statute.

In this case, plaintiffs provide two bases for jurisdiction under the Illinois long-arm statute: (1) the defendants are co-conspirators of companies, including Illinois companies, that have committed acts in furtherance of the conspiracy in Illinois; and (2) the defendants are doing business in Illinois through their subsidiaries.

*1. Conspiracy Jurisdiction*

Defendants argue that Illinois courts treat conspiracy jurisdiction with suspicion and have resisted "engrafting a broad conspiratorial accretion on the scope of the long-arm statutes." *Chromium Indus. Inc. v. Mirror Polishing & Plating Co.,* 448 F.Supp. 544, 552 (N.D.Ill.1978); *see also Green v. Advance Ross Elecs. Corp.,* 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203, 1208 (1981) (citing with apparent approval Chromium Industries' questioning of the "idea of jurisdiction based on the acts of co-conspirators" and stating that "even if long-arm jurisdiction over conspirators may be established in some cases, it has no application to this case."). However, *Chromium* has been effectively overruled by the legislative amendment of section 2–209 of the Illinois long-arm statute, which added what is now subsection (c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States"). *See Cameron v. Owens–Corning Fiberglas Corp., et al.,* 296 Ill.App.3d 978, 231 Ill.Dec. 55, 695 N.E.2d 572, 576–77 (1998) (upholding jurisdiction over British corporation based on allegations that it conspired with other companies which performed acts in Illinois). Moreover, *Green* does not stand for the proposition that conspiracy jurisdiction is untenable; it merely stated that conspiracy jurisdiction was inappropriate in that particular case because Illinois had jurisdiction over one alleged conspirator only because that individual elected to come to Illinois to sue the defendants. *See Green,* 56 Ill.Dec. 657, 427 N.E.2d at 1208; *see also Cameron,* 231 Ill.Dec. 55, 695 N.E.2d at 577 (discussing *Green*). Furthermore, in *Green* the Illinois Supreme Court went on to state that "for all co-conspirators to be subject to Illinois jurisdiction, one co-conspirator must have committed a tor-

tious act within Illinois as an agent for the other co-conspirators." *Id.* Therefore, it is now generally understood that the "Illinois long-arm statute encompasses the conspiracy theory of jurisdiction." *Cameron,* 231 Ill.Dec. 55, 695 N.E.2d at 577; *see also Lexecon Inc., et al. v. Milberg Weiss Bershad Specthrie & Lerach, et al.,* 1993 WL 179789, at *3 (N.D.Ill. May 24, 1993) ("Under Illinois law, jurisdiction over one conspirator is jurisdiction over all.").

To plead successfully facts supporting application of the conspiracy theory of jurisdiction, a plaintiff must allege both an actionable conspiracy and a "substantial act" in furtherance of the conspiracy performed in the forum state. *Textor, et al. v. Board of Regents of Northern Illinois University,* 711 F.2d 1387, 1392 (7th Cir. 1983); *see also Cameron,* 231 Ill.Dec. 55, 695 N.E.2d at 577. To support their claim of jurisdiction, plaintiffs allege that defendants were participants in a worldwide per se unlawful conspiracy to allocate territories, customers, sales volumes and market shares and to rig bids and fix and raise the prices of vitamins (Second Amended Complaint ¶¶ 40, 47, 48, 50, 52, 57–60); that defendants "performed unlawful acts in furtherance of their unlawful combination and conspiracy within the Northern District of Illinois and elsewhere" (Second Amended Complaint ¶ 2); that defendant Daiichi Fine Chemicals Inc. has its principal place of business in Illinois and was responsible for sale of vitamins subject to the conspiracy (Second Amended Complaint ¶ 26), and that defendant DuCoa L.P. is an Illinois limited partnership with its principal place of business in Illinois and distributed and sold vitamins throughout the United States (Second Amended Complaint ¶ 29).

Defendants claim that these allegations are legally insufficient to support a finding of jurisdiction in this case. Specifically, defendants claim that plaintiffs do not allege what acts these co-conspirators performed in Illinois in furtherance of the conspiracy; this type of bare, conclusory allegation, defendants claim, is not sufficient as a matter of law to establish conspiracy jurisdiction. *See Ten Mile Indus. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir.1987) ("[O]nly the well plead facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."). This Court agrees that plaintiffs' allegations as they now stand are insufficient to establish conspiracy jurisdiction over these alien corporations. Under the conspiracy theory of jurisdiction, non-resident defendants are deemed to have sufficient minimum contacts with Illinois if they participated in a conspiracy involving a substantial conspiratorial act *in Illinois.* *Zivitz v. Greenburg,* 1999 WL 984397, at *5 (N.D.Ill. Oct.25, 1999). "The substantial conspiratorial act occurring in Illinois is a jurisdictional act sufficient to establish minimum contacts with and confer jurisdiction over non-resident defendants." *Id.* At this point, there is insufficient detail of the alleged conspiratorial acts that actually occurred in Illinois. Since it is unclear from the complaint how much of the alleged activity occurred in Illinois, it is impossible to determine whether there was a "substantial conspiratorial act occurring in Illinois." *Zivitz,* 1999 WL 984397, at *5.

*2. Defendants' Activities with Subsidiaries*

Plaintiffs maintain that jurisdiction also exists over the alien defendants under the "doing business" provision of the Illinois long-arm statute. 735 ILCS 5/2–209(b)(4). A foreign corporation may be held to be "doing business" in Illinois based on the activities of its subsidiary. *Maunder v. DeHavilland Aircraft of Canada, Ltd.,* 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d 217, 223 (1984) (holding Canadian parent subject to jurisdiction based on activities of subsidiary in Illinois). Courts have not developed a bright-line test for determining when it is appropriate to exercise jurisdiction over a parent corporation based upon the activities of its subsidiary. *Gruca v. Alpha Therapeutic Corp.,* 19 F.Supp.2d 862, 865 (N.D.Ill.

1998). Whether the parent is subject to jurisdiction based on the activities of the subsidiary depends on the relationship between the parent and the subsidiary. *Schlunk v. Volkswagenwerk Aktiengesellschaft,* 145 Ill.App.3d 594, 105 Ill.Dec. 39, 503 N.E.2d 1045, 1049 (1986) (finding Illinois parent was doing business in Illinois through its wholly owned subsidiary, despite the fact that the parent and subsidiary had no officers or employees in common, the subsidiary maintained separate books and records and carried on business in its own name and for its own account, and all commercial transactions between the two were set out in legally enforceable contracts); *see also Gruca,* 19 F.Supp.2d at 866 ("in more recent years, courts deciding personal jurisdiction issues have looked at the 'real' rather than the 'formal' relationship between the parent and the subsidiary."). Where a parent has substantial control over a subsidiary that does business in Illinois, the parent is subject to jurisdiction. *See Japax, Inc. v. Sodick Co., Ltd.,* 186 Ill.App.3d 656, 134 Ill.Dec. 446, 542 N.E.2d 792, 797 (1989) (finding jurisdiction over Japanese parent which had "some control" over U.S. subsidiary, "or at least maintain[ed] significant connections with it in order to facilitate the sales and servicing of its systems."); *cf. IDS Life Insurance Co. v. SunAmerica Life Insurance Co.,* 136 F.3d 537, 540 (7th Cir.1998) (finding no jurisdiction over foreign parent where subsidiaries conducted their own businesses rather than parent's and foreign parent had "no offices or sales in Illinois.").

■ In order to determine whether a court has jurisdiction over a foreign defendant, the court must ascertain whether the defendant purposefully availed itself of the State's laws and benefits so that it is not unreasonable to subject it to defend a suit in that State. *See Japax, Inc.,* 134 Ill.Dec. 446, 542 N.E.2d at 798 (noting that alien parent "had more than mere knowledge that its products likely would end up in Illinois"); *see also Integrated Business Information Service v. Dun & Bradstreet Corp.,* 714 F.Supp. 296, 299–300 (N.D.Ill. 1989) (citing Wright & Miller § 1069 at 363) (jurisdiction over the local subsidiary does not confer jurisdiction over the foreign parent "if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent."). Relevant factors in determining whether a parent has purposefully availed itself of the State's laws and benefits through its activities with its subsidiary include: whether the parent arranges financing for and capitalization of the subsidiary; whether separate books, tax returns and financial statements are kept; whether officers or directors are the same; whether the parent holds the subsidiary out as its agent; the method of payment made to the parent by the subsidiary; and how much control is exerted by the parent over the daily affairs of its subsidiary. *Schwendener, Inc. v. City of Gary, Ind.,* 1998 WL 781098, at *5–6 (N.D.Ill. Nov.3, 1998).

At this point, there is insufficient detail for the Court to determine whether or not these alien defendants have purposefully availed themselves of Illinois' laws and benefits. In order to find that jurisdiction exists over these alien defendants under the "doing business" provision of the Illinois long-arm statute, this Court needs more information on the real relationship between these parents and their subsidiaries.

### C. Fed.R.Civ.P. 4(k)(2)

■ As discussed earlier, Fed.R.Civ.P. 4(k)(2) allows a district court to acquire jurisdiction over a foreign defendant which has insufficient contacts with any single state but has "contacts with the United States as a whole...." Advisory Comm. Note to 1993 Amendment. A plaintiff who seeks to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule. *United States v. Swiss American Bank, Ltd.,* 191 F.3d 30, 41 (1st Cir.1999). This includes a tripartite showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not

available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. *Id.* "The plaintiff, moreover, must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." *Id.* If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient. *Id.*

In this case, far from certifying that these defendants are not subject to suit in the courts of general jurisdiction of any state, plaintiffs contend that these foreign defendants have sufficient jurisdictional contacts with Illinois, as well as virtually every other state. *See* plaintiffs' opp. at 10, n. 11 ("Rule 4(k)(2) should not come into play here because the uncontroverted facts establish that each alien has substantial contacts with Illinois, the District of Columbia and virtually every other state that establish a basis for personal jurisdiction under state long-arm statutes.") Therefore, plaintiffs have not satisfied their burden of showing that Rule 4(k)(2) should apply in this case.

### D. Jurisdictional Discovery

Finally, plaintiffs contend that even if, on the existing record, there are insufficient grounds to support personal jurisdiction, they are entitled to conduct further jurisdictional discovery. The Court agrees. This Court's previous ruling on the national contacts issue may have influenced the scope of discovery taken by plaintiffs in this case. Therefore, since the D.C. Circuit has now established that local contacts are required, plaintiffs must be granted additional jurisdictional discovery on this issue.

If a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified. *GTE,* 199 F.3d at 1351–52 (citing *Crane v. Carr,* 814 F.2d 758, 760 (D.C.Cir.1987)). In *GTE,* the D.C. Circuit held that although plaintiffs had failed to establish a prima facie case of personal jurisdiction and the court was unable to tell whether jurisdictional discovery would assist GTE on this score, plaintiffs were entitled to pursue "precisely focused discovery aimed at addressing matters relating to personal jurisdiction" in order to supplement the "plainly inadequate" record. *Id.* at 1352.

Plaintiffs may either take additional jurisdictional discovery in order to attempt to plead sufficient facts to confer personal jurisdiction over these defendants under the Illinois long-arm statute, or they may plead that these defendants have insufficient contacts with any state and proceed under Rule 4(k)(2).

## III. CONCLUSION

For the foregoing reasons, this Court holds that it is bound by the D.C. Circuit's adoption of a local contacts test for personal jurisdiction under Section 12 of the Clayton Act. Due to this recent change in the law, plaintiffs are entitled to take additional discovery in order to resolve which method of jurisdiction—the Illinois long-arm statute or Fed.R.Civ.P. 4(k)(2)—is applicable in this case. An order will accompany this opinion.

***ORDER—Re: Personal Jurisdiction***

In accordance with the accompanying memorandum opinion, it is hereby

**ORDERED** that defendants RPSA, BASF AG, and Roche Ltd.'s motions to dismiss the *Cargill* action for lack of personal jurisdiction are granted to the extent that this Court holds that it is bound by the D.C. Circuit's adoption of a local contacts test for personal jurisdiction under Section 12 of the Clayton Act.[10] And it is further hereby

10. This decision on the proper test for establishing personal jurisdiction over defendants under Section 12 of the Clayton Act affects all cases in the Vitamins Antitrust Litigation.

**ORDERED** that these motions to dismiss are denied to the extent that this Court will not dismiss the complaints for lack of jurisdiction at this time. Instead, the Court will allow plaintiffs to take further jurisdictional discovery in order to discover whether these defendants have sufficient jurisdictional contacts with Illinois or whether Fed.R.Civ.P. 4(k)(2) applies in this case.