**DIAMOND CHEMICAL COMPANY,
INC., Plaintiff,**

v.

**ATOFINA CHEMICALS, INC.,
et al., Defendants.**

No. CIV.A.02–1018 CKK.

United States District Court,
District of Columbia.

June 5, 2003.

Mary Nicole Strimel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for Diamond Chemical Co., Inc.

Richard Arthur Ripley, Washington Lawyers' Committee, Washington, DC, Margaret Moran Zwisler, Eric James McCarthy, Elizabeth B. McCallum, Howrey, Simon Arnold & White, LLP, Washington, DC, for Atofina Chemicals, Inc., Atofina S.A.

Elizabeth B. McCallum, Howrey Simon Arnold & White, LLP, Washington, DC, for Elf Atochem S.A.

Elliot Edward Polebaum, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for Total Fina Elf S.A.

David A. Clanton, Brian F. Burke, Baker & McKenzie, Washington, DC, for Clariant Corp., Clariant AG, Clariant Intern. AG.

Harold D. Murry, Jr., Baker Botts, LLP, Washington, DC, for Hoechst AG, Hoechst Celanese Corp., CNA Holdings, Inc.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Pending before the Court is Defendant Total Fina Elf S.A.'s ("TFE" or "Defendant") Motion to Dismiss brought pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and Diamond Chemical Company's ("Plaintiff") Motion for Leave to Take Jurisdictional Discovery. Both motions are opposed. Upon consideration of TFE's Motion and supporting memorandum, Plaintiff's Motion and supporting memorandum, both parties' Opposition and Reply briefs, the submitted evidence, and the relevant law, the Court shall grant Plaintiff's request for jurisdictional discovery and deny without prejudice Defendant's Motion to Dismiss.

## I: BACKGROUND

Plaintiff filed its complaint in this case on May 23, 2002, on behalf of itself and all others similarly situated, claiming damages from Defendants' alleged antitrust conspiracy involving sodium monochloroacetate and monochloroacetic acid (collectively referred to as "MCAA"). Plaintiff's Complaint ("Compl.") ¶ 1; *see also* Memorandum in Support of TFE's Motion to Dismiss ("TFE Mem.") at 1.[1] Plaintiff claims that the alleged conspiracy ran "from at least September 1, 1995 through August 31, 1999." Compl. ¶ 2.

Named Defendants pertinent to the pending motion are as follows. Plaintiff alleges that Atofina Chemicals, Inc. ("Atofina N.A.") "is a corporation organized under the laws of Pennsylvania, with its office and principal place of business located [in] Philadelphia, Pennsylvania." Compl. ¶ 10. During the period of the alleged conspiracy, Plaintiff states that "Atofina's predecessor, Atochem North America, Inc., which changed its name to Elf Atochem North America, Inc. in 1992, was engaged in the manufacture, distribution and sale of MCAA in the United States and elsewhere." *Id.* According to Plaintiff, Atofina N.A. was "dominated and controlled" and indirectly owned until 2000 by Defendant Elf Atochem S.A. ("Atochem"), a French corporation with its principal place of business in France. *Id.* ¶ 11. Defendant Atochem was a subsidiary of Elf Acquitaine S.A. until TotalFina S.A. purchased the shares of Elf Acquitaine S.A. in October of 1999. Def. Reply at 12 n. 9.

Defendant Atofina S.A., according to Plaintiff, is a French corporation with its

---

1. Since filing its Complaint, Plaintiff has reached settlement with the following Defendants: Clariant Corporation, Clariant AG, Clariant International AG, Aventis S.A., Hoechst AG, Hoechst Celanese Corporation, and CNA Holdings, Inc. Pl. Consent Mot. for Leave to Dismiss and Refile Case Against Settling Defendants at 1 (Jan. 15, 2003). The non-settling Defendants are described above.

principal place of business in France, which owns a minority of the shares of Atofina Delaware, Inc. which in turn owns the majority of shares of defendant Atofina N.A. Compl. ¶ 12. Plaintiff claims that Atofina S.A. "succeeded to the assets and obligations of Atochem, including indirect ownership of Atofina N.A., and since then has dominated and controlled the business of Atofina N.A." *Id.* Plaintiff also asserts that Atofina S.A. was engaged in the manufacture, distribution and sale of MCAA in the United States and elsewhere during the period of the alleged antitrust conspiracy. *Id.*

Defendant TFE, according to Plaintiff, is a French Corporation with its principal place of business in France. *Id.* ¶ 13. Total Fina Elf S.A. is the name taken by TotalFina S.A. after its acquisition of Elf Aquitaine S.A in October of 1999. Pl. Reply at 8 n. 3, 12 n. 8. Plaintiff claims that TFE was engaged in the manufacture and sale of MCAA in the United States and elsewhere during the alleged conspiracy period. Compl. ¶ 13 Plaintiff contends that TFE has been the "ultimate parent ... and has dominated and controlled the business of Atochem, Atofina S.A., [and] Atofina N.A." *Id.* After the stock purchase, all of TotalFina and Elf Acquitaine's chemical companies were reorganized under the name "Atofina." Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl. Opp'n") at 10 (citing Mary Strimel Aff. at Ex. 6).

One named Defendant, Atochem, pled guilty to an antitrust violation with respect to MCAA. Compl. ¶ 1; TFE Mem. at 1. Defendants Atochem and Atofina S.A. filed Answers in this action on August 18, 2002, while Defendant Atofina N.A. filed its Answer on June 20, 2002. TFE filed this Motion to Dismiss on August 23, 2002, claiming this Court lacks personal jurisdic-tion and that Plaintiff has failed to state a claim upon which relief may be granted.

## II: DISCUSSION

### A. Personal Jurisdiction over Defendant TFE

■ When a defendant timely objects to a court's personal jurisdiction, the "general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C.Cir. 1988); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (holding that plaintiff bears the burden of proving essential jurisdictional facts). Requiring more than "bare allegation[s]," this Circuit has held that "a plaintiff 'must allege specific acts connecting [the] defendant with the forum.'" *First Chicago*, 836 F.2d at 1378 (quoting *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n. 5 (9th Cir. 1980)).

Plaintiff in its Opposition to TFE's motion to dismiss, alleges that this Court has general jurisdiction over TFE pursuant to D.C.Code § 13–334(a), specific jurisdiction over TFE pursuant to the District of Columbia's long-arm statute, D.C.Code § 13–423, and jurisdiction under the special venue provision of the Clayton Act, 15 U.S.C. § 22. Pl. Opp'n at 7, 8, 14. The Court shall first examine general jurisdiction under District of Columbia law, then the Clayton Act's venue provision, and finally examine Defendant's contacts under the D.C. long arm statute.

### 1. General Jurisdiction under District of Columbia Law

■ Under the laws of the District of Columbia, courts may "exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation

is 'doing business' in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C.Cir.2002) (citing D.C.Code § 13–334(a) [2]). The Due Process Clause permits such general jurisdiction over foreign corporations "only ... if the defendant's business contacts with the forum district are 'continuous and systematic.' " *Id.* at 509–10 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). "The District of Columbia Court of Appeals has indicated that the reach of 'doing business' jurisdiction under § 13–334(a) is coextensive with the reach of constitutional due process." *Id.* at 510 (citing *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1148 (D.C.1985)).

Plaintiff's Complaint makes the following "jurisdiction allegations" regarding TFE:

* TFE is the ultimate parent of and has dominated and controlled the business of Defendants Elf Atochem SA, Atofina SA, and Atofina Chemicals. Compl. ¶ 13.

* Defendants Elf Atochem SA, Atofina SA, and Atofina Chemicals, Inc. conspired with others to fix, maintain or stabilize prices and allocate markets for MCAA sold in the United States. Compl. ¶ 2.

* On March 14, 2002, Elf Atochem SA agreed to plead guilty to conspiring to eliminate competition in the United States among MCAA producers by participating in meetings and conversations to discuss the prices and market shares of MCAA sold in the United States and elsewhere; agreeing, during those meetings and conversations, to charge prices at certain levels and otherwise to increase and maintain prices of MCAA sold in the United States and elsewhere; issuing price announcements and price quotations in accordance with the agreement reached; and exchanging information on the sales of MCAA in the U.S. and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon prices and market share. Compl. ¶ 39.

* One or more of the conspirators resided, transacted business, were found, or had agents in this District. Compl. ¶ 6.

* A substantial part of the events giving rise to Plaintiff's claims occurred and a substantial portion of the affected interstate trade and commerce has been carried out [in the District of Columbia]. Compl. ¶ 6.

Pl. Opp'n at 7–8.[3] Plaintiff's Opposition brief does not attempt to argue that these

---

**2.** D.C.Code § 13–334 provides:

(a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

(b) When a foreign corporation transacts business in the District without having a place of business or resident agent therein, service upon any officer or agent or employee of the corporation in the District is effectual as to actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District.

This Circuit has noted that "although on its face § 13–334(a) appears only to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District." *Gorman*, 293 F.3d at 510 n. 1.

**3.** The Court notes that although Plaintiff alleged in its Complaint that TFE was engaged in the manufacture and sale of MCAA in the

facts on their own are sufficient to establish this Court's general jurisdiction over TFE. Rather, Plaintiff contends that in addition to whatever contacts TFE has with the District of Columbia, the "jurisdictional contacts of TFE's dominated and controlled subsidiaries may be attributed to TFE under D.C. law." *Id.* at 8.

"Ordinarily, a defendant corporation's contacts with a forum may not be attributed to ... affiliated corporations. An exception exists, however, where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." *Shapiro, Lifschitz & Schram v. Hazard*, 24 F.Supp.2d 66, 70 (D.D.C.1998); *see also Material Supply Int'l. Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d 13, 19 (D.D.C. 1999). Therefore, if Plaintiff can show that TFE's subsidiaries are mere "alter egos" of TFE and have sufficient contacts with the district to permit general jurisdiction over them, the Court can also exercise such jurisdiction over TFE.

To establish that a subsidiary is an alter ego of its parent, also referred to as "piercing the corporate veil," courts look to whether there is a unity of ownership and interest. *Hazard*, 24 F.Supp.2d at 70 n. 3. The District of Columbia Court of Appeals has stated that piercing the corporate veil requires showing that " 'the corporation is not only controlled by those persons [alleged to be alter egos of the corporation], but also that the separateness of the persons and the corporation

has ceased and ... an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice.' " *Camacho v. 1440 Rhode Island Avenue Corp.*, 620 A.2d 242, 248–49 (D.C.1993) (quoting *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C.1984)). Furthermore, "since piercing the corporate veil is a doctrine of equity, 'the factor which predominates will vary in each case, and the decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of the corporation.' " *Id.* (citing *Vuitch*, 482 A.2d at 815–16).

Plaintiff states that it "has developed evidence supporting its allegation that TFE dominates and controls Atofina [N.A.]." [4] Pl. Opp'n at 9. Such evidence includes shared executives between TFE and Atofina N.A. Specifically, Plaintiff submits that Mr. Jean–Pierre Seeuws "[c]urrently ... serves simultaneously as President and CEO of Atofina Chemicals, Inc. and as 'General Representative' of the chemicals division of [TFE] in North America." Pl. Opp'n at 9. Furthermore, Plaintiff submits that Mr. Jean–Bernard Lartigue "was a Senior Vice President of the Fine Chemicals Division at TFE in charge of Fine and Industrial Chemicals and Engineering Polymers from 1998 to 2002," while "simultaneously serv[ing] as a Senior Vice President of defendant ... Elf Atochem S.A.," and "also on the Board of Directors of defendant Atofina [N.A.] from at least January 1, 1996 through 2000." *Id.* However, as Defendant points out, Def.

United States and elsewhere during the alleged conspiracy period, Compl. ¶ 13, it does not assert this allegation in its Opposition as a basis for this Court's jurisdiction over TFE.

4. Plaintiff's briefing on piercing the corporate veil to establish general jurisdiction over TFE under D.C. law cites to caselaw analyzing the

piercing of the corporate veil for Clayton Act venue purposes. *See, e.g.,* Pl. Opp'n at 10 (citing *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1200–01 (D.D.C.1984)). The Court examines those theories when it takes up the question of jurisdiction under the Clayton Act.

Reply at 8 n. 4, the documents supporting Plaintiff's assertions show that Mr. Lartigue was listed as Senior Vice President of the Fine Chemicals Division of TotalFina S.A. on TotalFina S.A.'s December 31, 1999, disclosure document, Aff. of Joseph M. Barton ("Barton Aff.") at Ex. 17. Documentation provided by Plaintiff for Mr. Lartigue's positions prior to the end of 1999 only cover his positions at Elf Atochem and Elf Acquitaine.

Plaintiff also points to evidence that TotalFina and Elf Acquitaine merger resulted in "joint use of trademarks, and a common marketing image," factors Plaintiff argues counsel in favor of piercing the corporate veil. Pl. Opp'n at 10. Plaintiff submits that Mr. Francois Cornelis, executive vice president of TotalFinaElf Chemicals, was named chairman of the new TFE chemical group named Atofina, which represented the merged chemical activities of TotalFina and Elf Acquitaine. *Id.;* Aff. of Mary N. Strimel at Ex. 6 ("Corporate press release: Atofina launches international corporate campaign" (Feb. 5, 2001)). Cornelis was to "head up all of the chemical activities of the new group . . . ." *Id.* Plaintiff also argues that TFE's efforts to give the merger a "higher profile," the fact "Atofina's logo was specifically designed to call to mind the corporate presence of" TFE, and that TFE's "internet home page links directly to Atofina's under the heading 'Our activities' and 'Chemicals,'" counsel in favor of piercing the corporate veil. Pl. Opp'n at 10–11.

In addition, Plaintiff argues that "TFE has availed itself of the special benefits of the District of Columbia through other subsidiaries . . . ." Pl. Opp'n at 11–12. Plaintiff submits that one TFE subsidiary, TotalFinaElf Gas & Power North America, Inc., is registered to do business in Washington, D.C. and maintains an agent for service of process in the district, and that another subsidiary, TotalFinaElf E & P USA, Inc., has filed suit and intervened in several actions in this court. *Id.* at 11. Furthermore, Plaintiff asserts that TFE's American Depository Receipts trade on the New York Stock Exchange which thereby requires the company to file statements with the Securities and Exchange Commission in Washington, D.C. *Id.* Plaintiff claims that this "suggest[s] that TFE may have business relations with lawyers and consultants in the District and may have sold American Depositary Receipts to District Residents." *Id.* at 11–12. Finally, Plaintiff notes that TFE is listed as a member of the Industrial Research Institute, a Washington, D.C.-based trade association. *Id.* at 12.

After presenting these jurisdictional facts, Plaintiff asks the Court to "look not at defendant's contacts in isolation, but instead to look at 'the actual unity and continuity of its whole course of conduct.'" *Id.* at 12 (quoting *Zenith Radio Corp. v. Matsushita,* 402 F.Supp. 262, 321 (E.D.Pa. 1975) (interpreting Section 12 of the Clayton Act)). In this regard, Plaintiff has confused the legal inquiry for service of process and venue under Section 12 of the Clayton Act with the general jurisdiction analysis under District of Columbia law. Jurisdiction under these two statutes requires a separate analysis and the Court declines to consider precedent construing one when applying the other.

■ As noted above, Plaintiff argues that this Court has general personal jurisdiction over TFE due to the contacts of its "alter ego" subsidiaries with the District of Columbia. Plaintiff has failed to demonstrate that Atofina N.A. or any other subsidiary with continuous and systematic contacts with the District of Columbia, is not a separate entity but in fact TFE

acting under a different guise.[5] The strongest facts supporting Plaintiff's position are the shared executives between TFE and Atofina N.A. and the joint promotion of TFE and Atofina after the Total-FinaElf Aquitaine merger. However, these facts are not sufficient to establish that either Atofina N.A. or Atofina is TFE's alter ego. The Supreme Court has recognized that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary acts." *United States v. Bestfoods*, 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (quoting *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988)). Furthermore, joint promotion without more does not mandate the finding that a subsidiary is a mere shell for its parent corporation. On the record provided, the Court cannot conclude that any of the subsidiaries implicated by Plaintiff's asserted jurisdictional facts is an alter ego of TFE.[6]

5. The Court also notes that the enumerated jurisdictional facts may not suffice to establish general jurisdiction over the subsidiaries through which Plaintiff seeks to establish personal jurisdiction over TFE.

6. Although Plaintiff does not argue that the jurisdictional facts alleged regarding TFE's own contacts with the District of Columbia are sufficient for this Court to exercise general personal jurisdiction over TFE, the Court notes that the contacts alleged are insufficient to grant this Court general personal jurisdiction over TFE. Plaintiff alleges that TFE has contacts with the District of Columbia in that it files reports with the Securities and Exchange Commission and likely has lawyers in Washington, D.C. who assist with such filings. As the District of Columbia Superior Court has held, "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C.1976).

Even if the Court could make such a determination, Plaintiff has failed to demonstrate that "adherence to the fiction of the separate existence of the corporation would sanction fraud or promote injustice." *Camacho*, 620 A.2d at 249. Plaintiff's only allegations on this point are that "the continued corporate existence of Elf Atochem SA is unclear" and that "Plaintiff has had no discovery regarding the entities that succeeded to the liabilities of Elf Atochem S.A." Pl. Opp'n at 14 (inconsistent presentation of S.A. in the original). This unsubstantiated statement clearly does not meet Plaintiff's burden of providing the Court with more than "bare allegations" supporting its jurisdictional arguments. *First Chicago*, 836 F.2d at 1378.

### 2. Jurisdiction Under the Clayton Act

The Clayton Act provides a venue provision which Plaintiff claims provides this Court with personal jurisdiction over TFE.[7] Section 12 of the Clayton Act states that

Plaintiff's allegation that TFE may have sold American Depository Receipts to D.C. residents is no more than a "bare allegation[ ]," *First Chicago*, 836 F.2d at 1378, and provides the Court with no basis for finding "continuous and systematic" contacts with the forum.

7. The Court observes that Plaintiff's briefing is unclear as to the bases it asserts for personal jurisdiction over TFE. In its Opposition brief, Plaintiff divides its arguments into those asserting the Court has general jurisdiction over TFE, addressed *supra*, and those claiming the Court has specific jurisdiction over TFE, addressed *infra*. However, within its discussion of general jurisdiction Plaintiff intersperses citations to and standards from cases applying Section 12 of the Clayton Act while never explicitly arguing that Section 12 provides a basis for venue. Given this confusion, and the fact that Plaintiff's complaint lists Section 12 of the Clayton Act as authority for asserting venue is proper in this district, Compl. ¶ 6, the Court examines its jurisdiction over TFE pursuant to the Clayton Act.

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. As Judge Thomas Hogan, now Chief Judge for this District observed, "Section 12 essentially is a long-arm statute which permits service of process in a non-forum district, so long as the venue provision is met." *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1195 (D.D.C.1984). The difference between jurisdiction under the Clayton Act and D.C.'s long-arm statute is that while both look at contacts with the district, under Section 12 of the Clayton Act "the transactions do not have to be related to the cause of action or the subject matter of the suit," while under the D.C. long-arm statute there must be a connection between the jurisdiction contacts and the cause of action. *Id.* at 1204.

Here the parties dispute the fulfillment of the venue prong of Section 12 but not its service of process provision. Plaintiff makes no attempt to demonstrate this Court's personal jurisdiction over TFE by claiming TFE is an "inhabitant" or is "found" in the District of Columbia. *See* Pl. Opp'n at 6–14. Plaintiff argues that TFE "transacts business" in the District of Columbia through the activities of its subsidiaries, contending that "[w]here the parent exercises continuing supervision and intervention in the subsidiaries' affairs, the subsidiaries' activities are attributable to the parent for Clayton Act venue purposes." Pl. Opp'n at 8 (quoting *Chrysler Corp.*, 589 F.Supp. at 1200 (citing *United States v. Scophony Corp.*, 333 U.S. 795, 814, 68 S.Ct. 855, 92 L.Ed. 1091 (1948))). In order to prevail under this theory Plaintiff must show that TFE "exercises continuing supervision and intervention in [its] subsidiaries' affairs" and that those subsidiaries "transact business" within the meaning of the statute. Plaintiff relies on the same facts it used in its argument for general jurisdiction over TFE pursuant to D.C. law, discussed *supra*, in its effort to establish this Court's jurisdiction over TFE under the Clayton Act.

The Court turns first to the question of TFE's relationship with its subsidiaries. Chief Judge Hogan has examined the issue of .asserting jurisdiction over foreign corporations through the contacts of the subsidiaries they "control" under the Clayton Act. *See Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182 (D.D.C.1984). He noted that two cases provide guidance for the factors a court should consider when determining whether or not it can exercise jurisdiction over a corporation through the contacts of its subsidiaries.

In *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir.1977), the Ninth Circuit Court of Appeals explained that a Court should consider

> [w]hether the officers and directors of the two are the same; whether the subsidiary pays cash for products sold or service rendered to it by the parent; whether separate books, bank accounts, tax returns, financial statements and the like are kept; and whether the parent corporation holds the subsidiary out as an agent, either expressly or impliedly as by representing it as doing business in, or has an office in the state, when only the subsidiary is present.

*Id.* at 426 (citations omitted).

And in *Zenith Radio Corp. v. Matsushita Elec. Ind. Co., Ltd.*, 402 F.Supp. 262 (E.D.Pa.1975), the District Court listed the following practical factors it had gleaned:

the performance by the subsidiary or affiliate of business activities in a district, for example, sales and servicings, that in a less elaborate corporate scheme the absent corporation would perform directly by its own branch offices or agents. Another is a partnership in world-wide business competition between the absent corporation and the corporation that is present in a district. A third factor is the capacity of the absent corporation to influence decisions of the subsidiary or affiliate that might have antitrust consequences. Controlling stock ownership and interlocking directorates are, of course, indices of such a capacity. Yet another factor is the part that the subsidiary or affiliated corporation plays in the over-all business activity of the absent corporation. A fifth factor is the existence of an integrated sales system involving manufacturing, trading and sales corporations. A related factor is the status of the subsidiary or affiliate as a marketing arm of the absent corporation. A seventh factor is the use by the subsidiary or affiliate of a trademark owned by the parent. The transfer of personnel back and forth between the absent corporation and its subsidiary or affiliate is another factor that a court may properly consider. So is the presentation of a common marketing image by the related corporations. This is especially true when those corporations hold themselves out to the public as a single entity that is conveniently departmentalized either nationally or worldwide. Yet another factor is the granting of an exclusive distributorship by the absent corporation to its subsidiary or affiliate.

402 F.Supp. at 327–28 (citations omitted).

*Chrysler Corp.,* 589 F.Supp. at 1200–01. Chief Judge Hogan noted that the Supreme Court has instructed that in applying Section 12 [of the Clayton Act], a court should not

> [atomize a defendants enterprise] into minute parts or events, in disregard of the actual unity and continuity of the whole course of conduct; ... there could be no valid object in expanding their pulverizing approach ... [m]ore especially would such an extension be inappropriate ... for, in cases against companies incorporated outside the United States, that extension would bring back all the obstacles to enforcement of antitrust policies and remedies which existed for domestic corporations before § 12 was enacted to give relief from these obstacles.

*Id.* at 1202 (quoting *Scophony,* 333 U.S. at 817, 68 S.Ct. 855).

The Court observes that Plaintiff's proffered evidence related to TFE's control over its subsidiaries can be divided into three categories: (1) evidence regarding TFE and Atofina N.A.'s shared directors *prior* to the TotalFina and Elf Aquitaine merger; (2) evidence regarding the joint marketing efforts of TFE and the newly constituted Atofina chemical group formed *after* the TotalFina–Elf Aquitaine merger and shared Atofina/TFE officers and directors; and (3) contacts TFE has with the district through the activities of two other TFE subsidiaries, TotalFinaElf Gas & Power North America, Inc. and TotalFinaElf E & P USA, Inc. However, the Court declines to consider the second and third groupings of jurisdictional contacts for purposes of this analysis because none of these contacts are connected to the alleged conspiracy.

As Judge Oliver Gasch of this District wrote, "[t]he *essential* element required before a court can find that one

corporate entity was transacting business through an alter ego is control *over the conduct that allegedly violated the antitrust laws.*" *Caribe Trailer Sys., Inc. v. Puerto Rico Mar. Shipping Auth.*, 475 F.Supp. 711, 718 (D.D.C.1979), *aff'd*, No. 79–1648, 1980 WL 130478 (D.C.Cir. July 3, 1980), *cert. denied*, 450 U.S. 914, 101 S.Ct. 1355, 67 L.Ed.2d 339 (1981) (emphasis added). In line with this statement, the Court observes that looking to the contacts of subsidiaries not involved in the conspiracy would not serve the purpose of Section 12 of the Clayton Act. As the Supreme Court has explained, Congress enacted Section 12 in order to

> relieve[ ] persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs *done in the places of their business or residence.* A foreign corporation no longer could come to a district, perpetuate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due.

*Scophony,* 333 U.S. at 810, 68 S.Ct. 855 (emphasis added). The purpose behind the Clayton Act's venue provision is to hold offending corporations accountable in the areas where their offensive conduct took place; to use the contacts of uninvolved subsidiaries would not serve the purposes of the provision.

Furthermore, Clayton Act cases cited for the notion of attaching the jurisdictional contacts of a subsidiary to its parent corporation examine only the subsidiaries involved in the anticompetitive conduct in the district and not uninvolved affiliates. *See e.g., id.* at 814, 68 S.Ct. 855 (finding personal jurisdiction under Section 12 existed in the Southern District of New York

over a British company through the activities of an affiliate controlled and supervised by the British company); *Chrysler Corp.*, 589 F.Supp. at 1201–02 (finding personal jurisdiction over Toyota Motor Corporation for an antitrust suit involving the production and distribution of a compact car through the activities of its national and regional automotive marketing subsidiaries); *Cascade Steel Rolling Mills, Inc. v. C. Itoh & Co.*, 499 F.Supp. 829, 838–40 (D.Or.1980) (finding personal jurisdiction in Oregon over several Japanese companies in an antitrust suit involving steel products through the activities of their subsidiaries involved in the sale of steel in Oregon).

■ Turning to this case, Plaintiff does not allege that TFE subsidiaries TotalFinaElf Gas & Power North America, Inc. or TotalFinaElf E & P USA, Inc., are connected in any way to the antitrust conspiracy that forms the subject of its complaint, nor does it explain how their having an office and an agent in Washington, D.C., or filing a lawsuit in the district contributed to the MCAA antitrust conspiracy. Moreover, neither of these companies is a named defendant in Plaintiff's complaint.

In terms of TFE's post-merger actions with regard to Atofina, these actions occurred *after* August 31, 1999—the date Plaintiff alleges the conspiracy period ended.[8] Pl. Compl. ¶ 2. TotalFina acquired shares in Elf Acquitaine S.A. in October 1999, and European authorities approved the transaction in February 2000. Def. Reply at 1 n. 1. Plaintiff does not explain how such actions could possibly constitute "control over the conduct that allegedly violated the antitrust laws" considering that they occurred after the alleged con-

---

**8.** Plaintiff's Complaint alleges that the conspiracy period lasted from "at least September 1, 1995 through August 31, 1999." Pl. Compl. ¶ 2.

spiracy ended. *Caribe Trailer Sys.*, 475 F.Supp. at 718.

Remaining are the allegations of common directors/officers between TotalFina and Atofina N.A. prior to the TotalFina–Elf Aquitaine merger. Plaintiff's only allegation of common directors/officers during the conspiracy period is that Mr. Lartigue's was a member of the board of directors of Atofina N.A. and TotalFina Senior Vice President. *See* Pl. Opp'n at 9. However, as discussed *supra,* the documentation submitted in support of Plaintiff's assertion only shows that Mr. Lartigue was TotalFina's Senior Vice President in late December 1999, months after the end of the alleged conspiracy. Therefore, this single fact is not sufficient to show continuing supervision and control of Atofina N.A. by TotalFina S.A. during the alleged conspiracy period.

Given the lack of evidence presented by Plaintiff regarding TFE's supervision and intervention in the alleged antitrust activities of Atofina N.A., the Court finds that Plaintiff has not established this Court's jurisdiction over TFE under Section 12 of the Clayton Act.

### 3. Specific Jurisdiction

■■■ When examining its jurisdiction over a non-resident, "a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C.Cir.2000). The District of Columbia's long-arm statute provides in part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia; . . .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . .

D.C.Code. § 13–423.

■■■ Plaintiff claims that "TFE succeeded to the liabilities of Elf Atochem SA through the purchase and acquisition of that entity by Elf Acquitaine, and that Elf Atochem SA and Atofina [N.A.] have the requisite contacts to subject them to personal jurisdiction in this District." Pl. Opp'n at 15 (citations omitted).[9] Plaintiff goes on to assert that TFE is the "successor and alter ego of Elf Atochem SA, Atofina SA and Atofina [N.A.]." *Id.* at 17. Plaintiff cites to *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d 13 (D.D.C.1999) which lays out "four tests to determine whether a parent corporation is liable for the acts of its subsidiary." *Material Supply Int'l,* 62 F.Supp.2d at 20 (citing *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 61 (D.D.C.1996)). As the *Richard* court explained:

the courts have applied four different tests to determine whether a parent cor-

---

9. Defendant disputes this characterization. According to TFE, "Elf Atochem was a subsidiary of Elf Aquitaine S.A. when TFE pur-

chased the shares of Elf Acquitaine in October 1999." Def. Reply at 12 n. 8.

poration is liable for the acts of its subsidiary. These tests are: (1) the "agency" test under which the plaintiffs must establish that the parent exercised a significant degree of control over the subsidiary's decisionmaking; (2) the "alter ego" test which is founded in equity and permits the court to pierce the corporate veil when the court must prevent fraud, illegality or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability from a crime; (3) the "instrumentality" test under which the plaintiff must establish that the parent exercises extensive control over the acts of the subsidiary giving rise to the claim of wrongdoing; and (4) the "integrated enterprise" test under which the court considers (a) interrelation of operations, (b) centralized control of labor relations, (c) common management, and (d) common ownership or financial control.

*Richard,* 946 F.Supp. at 61 (citations and internal quotation marks omitted). Plaintiff's reliance on this line of analysis is misplaced. The issue of whether or not to hold TFE liable for the actions of its acquired subsidiaries is separate and distinct from the threshold question of whether or not this Court has jurisdiction over TFE. The Court interprets Plaintiff's argument as a request that the Court engage in the same "alter ego" analysis as · was done *supra* with regard to the question of whether this Court has general jurisdiction over TFE through the contacts of its subsidiaries except under the District of Columbia's long-arm statute. In addition to the fact the Court has already found no basis for the allegation TFE's subsidiaries are merely its alter ego, Plaintiff's failure to allege with any particularity actions

committed by TFE's subsidiaries related to its claim that occurred in the District of Columbia dooms its assertion of specific jurisdiction over TFE.

As noted *supra,* Plaintiff has the burden of alleging "specific acts connecting [the] defendant with the forum." *First Chicago,* 836 F.2d at 1378 (citation and internal quotation marks omitted). The "jurisdictional allegations" in Plaintiff's Complaint, reiterated in its Opposition brief, *see* Pl. Opp'n at 7–8, are that these subsidiaries engaged in an MCAA antitrust conspiracy involving MCAA sold in the United States, *id.* at 7 (citing Pl. Compl. ¶¶ 2, 39), that "one or more of the conspirators resided, transacted business, were found, or had agents in this district," [10] *Id.* at 8 (citing Pl. Compl. ¶ 6), and that a "substantial part of the events giving rise to Plaintiff's claims occurred and a substantial portion of the affected interstate trade and commerce has been carried out [in the District of Columbia]," *id.* at 8 (citing Pl. Compl. ¶ 6), 15 (citing Pl. Compl. ¶¶ 2, 6, 34–35, 38). None of these jurisdictional facts are sufficiently specific to establish specific jurisdiction over TFE's subsidiaries for Plaintiff's antitrust claim. Engaging in an antitrust conspiracy executed in the *United States* does not meet the D.C. long-arm statute's requirement that the injury be committed in the District of Columbia, and Plaintiff has not connected the alleged presence of the subsidiaries in the District to the conspiracy alleged. Furthermore, Plaintiff's general allegation that substantial portions of the conspiracy occurred in and were felt in the District of Columbia is not specific enough to meet its burden of showing jurisdiction in opposing a motion

---

**10.** Plaintiff's Complaint alleges that "one or more defendants transacted business, maintained offices, had agents, or were otherwise found within the District of Columbia." Pl.

Compl. ¶ 6. The complaint does not specify which of the 11 originally named Defendants this statement refers to, and neither does Plaintiff's Opposition brief.

to dismiss for lack of personal jurisdiction.[11]

### 4. Jurisdictional Discovery

Plaintiff, in addition to opposing TFE's Motion to Dismiss, has filed a cross-motion for leave to take jurisdictional discovery.[12] Plaintiff requests discovery of "specific information about the activities of TFE, its agents, and its alleged alter ego companies in the District of Columbia. The [discovery] requests also seek more complete information about the managerial control exerted by TFE executives over TFE's affiliates, the flow of funds between the affiliates, and TFE's knowledge of and participation in the MCAA price-fixing conspiracy." Pl. Opp'n at 18.

 "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El–Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.1996). This Circuit has held that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE*, 199 F.3d at 1351 (citing *Crane v. Carr*, 814 F.2d 758, 760 (D.C.Cir. 1987)). However, "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090

(D.C.Cir.1998); *see also Acker v. Royal Merchant Bank & Finance Co.*, No. CIV. A. 98–00392, 1999 WL 1273476, *5 (D.D.C. Feb.10, 1999) ("Although discovery should be granted freely, it can be denied when the plaintiff has failed to present facts that could establish jurisdiction.").

 This Circuit's standard for permitting jurisdictional discovery is quite liberal, and the Court finds that even though Plaintiff has not made out a *prima facie* case of jurisdiction as required by other jurisdictions, *see, e.g., Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir.1998), Plaintiff is entitled to jurisdictional discovery, *see In re Vitamins Antitrust Litig.*, 94 F.Supp.2d 26, 35 (D.D.C.2000) (noting that the *GTE* court permitted jurisdictional discovery even though "plaintiffs had failed to establish a prima facie case of personal jurisdiction"). In fact, the *GTE* court permitted jurisdictional discovery even though it could not "tell whether jurisdictional discovery will help to sort out" the jurisdictional questions in the case. *GTE*, 199 F.3d at 1352. Given this statement from the Court of Appeals, this Court finds it hard to imagine a situation where a plaintiff could not "demonstrate[ ] that it can supplement its jurisdictional allegations through discovery." *Id.* at 1351. Furthermore, since there is no indication that Plaintiff's request is not made with the "good faith belief that such discovery will enable it to show that the court has personal jurisdiction over defendant," *Caribbean Broad. Sys.*, 148 F.3d at 1090,

---

11. Other alleged connections between TFE's subsidiaries and the District of Columbia made in Plaintiff's Opposition brief fail to connect the activities to the conspiracy and are not presented in Plaintiff's attempt to establish specific jurisdiction under the D.C. long-arm statute. *See* Pl. Opp'n at 8–9 (Atofina [N.A.] is registered to do business in the district and maintains an agent for service of process in the district, employees of Atofina N.A. have regularly traveled to the district, an Atofina N.A. manager is an officer in a business association located in the district, and Atofina N.A. is a member of several trade associations in D.C.).

12. Plaintiff briefed its cross-motion in its Opposition brief and filed a separate Reply.

the Court finds, despite Plaintiff's paltry showing under all three theories of personal jurisdiction, it has no choice but to allow Plaintiff to "pursue precisely focused discovery aimed at addressing matters related to personal jurisdiction." *GTE,* 199 F.3d at 1352.

### 5. Conclusion

After reviewing the parties' briefs, submitted exhibits, and the relevant law, the Court shall grant Plaintiff's Motion for jurisdictional discovery and deny without prejudice Defendant's motion to dismiss for lack of personal jurisdiction. Plaintiff shall initiate its requested discovery, and such discovery shall end no later than August 22, 2003.[13] Defendant TFE shall refile its Motion to Dismiss or otherwise respond to Plaintiff's Complaint by September 5, 2003.

### B. *Motion to Dismiss for Failure to State a Claim*

■■■ TFE also moves to dismiss this case for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Generally, when reviewing a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) a court will not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, Rule 12 dictates that if a 12(b)(6) movant presents "matters outside the pleading ... [that are] not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12; *see also Currier v. Postmaster General,* 304 F.3d 87, 88 (D.C.Cir.2002) (considering and relying on material outside the complaint converts a Rule 12(b)(6) motion into one for summary judgment). As both parties have submitted "matters outside the pleading" and the Court has not excluded them, Defendant's Rule 12(b)(6) motion will be treated as a motion for summary judgment under Rule 56.

Under Rule 56, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal citations omitted). The Court is to draw all inferences from the supporting records submitted in favor of the party opposing the

---

**13.** The Court does not rule on the appropriateness of the discovery requests submitted as exhibits to the Affidavit of Joseph Barton. However, the Court is uncertain as to why some of these requests seek to discover specific evidence regarding TFE and its subsidiaries' involvement in MCAA production and sales. Jurisdictional discovery must be "pre-cisely focused" on matters related to personal jurisdiction. *GTE,* 199 F.3d at 1352. Appropriate discovery would appear to encompass TFE's contacts with the District of Columbia, TFE's relationship with its subsidiaries and its subsidiaries' contacts with the District of Columbia.

summary judgment motion. However, mere allegations or denials in the non-moving party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Furthermore, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251, 106 S.Ct. 2505.

 TFE states that the elements of civil conspiracy "include: (1) an agreement; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the conspiracy". Def. Mem. at 15 (citing *Sculimbrene v. Reno*, 158 F. Supp 2d 8, 16

(D.D.C.2001)). TFE argues that in order to avoid a motion to dismiss, "Plaintiff[ ] must allege a 'meeting of the minds' as to some improper purpose," *id.* (quoting *Sculimbrene*, 158 F. Supp 2d at 16), and that "Plaintiff must also allege the 'agreement of each defendant to the operation of the conspiracy,' " *Id.* (quoting *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, 837 F.2d 775, 780 (7th Cir.1988)). TFE contends that since the only allegation made against TFE in the Complaint is that it dominated and controlled subsidiaries alleged to be part of the conspiracy, and that the Complaint does not allege that TFE agreed to the conspiracy or engaged in the conspiracy, Plaintiff has failed to state a claim against TFE for conspiracy upon which it can obtain relief. *Id.* TFE posits that efforts to hold it liable for the acts or omissions of its subsidiaries cannot succeed. *Id.* at 15–16.

The Court interprets Plaintiff's response to this argument to be that TFE engaged in the conspiracy by virtue of its control over its subsidiaries that engaged in the conspiracy.[14] In essence, Plaintiff's argument, like its jurisdictional claims, requires

---

14. Plaintiff contends that TFE can be held liable for the acts of companies it acquired. Pl. Opp'n at 24. Plaintiff cites to cases holding that

> Ordinarily, a business entity which acquires the *assets* of another business is not liable for its predecessor's liabilities and debts. There are several recognized exceptions to this general rule. Liability will be imposed on the successor entity when
> (1) the buyer expressly or impliedly agrees to assume such debts; or (2) the transaction amounts to a de facto merger of the buyer and seller; or (3) the buying corporation is a "mere continuation" of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts.

*Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 89–90 (D.C.1994) (citing to *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758

F.2d 1451, 1456, *reh'g denied*, 765 F.2d 154 (11th Cir.1985) (emphasis added)); *see also Material Supply Int'l*, 62 F.Supp.2d at 23 (quoting *Bingham* ). Plaintiff contends that "[d]rawing all inferences in Plaintiff's favor as the Court must, Plaintiff's allegations of TFE's purchases, domination and control are sufficient to meet the consolidation/merger, continuation, or agreement exceptions." Pl. Opp'n at 25.

This exercise is inapplicable to the case at bar. This "piercing of the corporate veil" analysis applies when "a business entity ... acquires the *assets* of another business." *Bingham*, 637 A.2d. at 89. Here there is no dispute that TFE is the result of the purchase of Elf Aquitaine S.A.'s stock by TotalFina S.A. and that Atofina N.A. and the other subsidiaries implicated by Plaintiff's antitrust suit are subsidiaries of TFEthey have not had their assets acquired by TFE.

a piercing of the corporate veil analysis. It is a well established principle of corporate law that courts will respect the corporate form unless doing so will result in injustice. *See* 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 25.

> A "subsidiary corporation" is one which is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of the capital stock. Notwithstanding the fact that two corporations may be extremely interrelated, each is deemed to have an independent existence. The mere ownership of the capital stock of one corporation by another does not create an identity of corporate interest between the two companies, or create the relationship of principal and agent, or representative, or alter ego between the two. A corporation, just as an individual, is entitled to the benefits of limited liability if it chooses to invest in the securities of other corporations and may exercise the control which inheres in stock ownership. A parent corporation does not lose the benefits of limited liability by taking an active interest in the affairs of its subsidiary, by using its voting power to elect directors, or by entering into contracts with the subsidiary, so long as the corporate formalities are observed. But ... the fiction of corporate entity may be and should be disregarded in the interests of and to promote justice in such cases as fraud, violation of law or contract, public wrong, or to work out

> the equities among members of the corporation internally and not involving rights of the public or third persons

*Id.* (footnotes omitted); *see also id.* § 33 ("[T]he mere fact that there exists a parent-subsidiary relationship between two corporations [does not] make the one liable for the torts of its affiliate.").

In Plaintiff's analysis of specific jurisdiction it noted that a parent corporation can be held liable for the acts of its subsidiary if one of four tests is met: (1) the agency test; (2) the alter ego test; (3) the instrumentality test; and (4) the integrated enterprise test. Pl. Opp'n at 16 & n. 7; *see also supra* discussion of *Richard v. Bell Atlantic Corp.*, 946 F.Supp. at 61. However, Plaintiff only argues that the alter ego test would be met under its allegations, and does not attempt to establish liability through any of the other three tests. The Court has already determined that the evidence presented does not establish that Atofina N.A. or any other TFE subsidiary is an alter ego of TFE. Furthermore, Atofina N.A., Atofina S.A., and Elf Atochem S.A. have filed Answers in this case and Plaintiff may pursue its claims against them.[15]

 Although Plaintiff has not met its burden, it insists that it should be allowed to take discovery. Rule 56(f) of the Federal Rules of Civil Procedure states that

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by

---

15. In its discussion of general jurisdiction, Plaintiff states that "the continued corporate existence of Elf Atochem SA is unclear: its chemical business merged with TotalFina's in April 2000, and the [TFE General Counsel Alain–Marc] Irissou declaration [submitted with TFE's Motion] does not describe its fate and finances as a corporate entity.... In order to assure that the Class can recover for the Atofina group's price fixing, Plaintiff

should be entitled to pursue its claims against all potential solvent successors to Elf Atochem S.A...." Pl. Opp'n at 14. Such unsubstantiated, speculative assertions are not sufficient to meet Plaintiff's burden under the summary judgment standard and certainly does not provide the Court with the basis to pierce the corporate veil in order to "promote justice." *See Camacho*, 620 A.2d at 248–49.

affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed R. Civ. P. 56(f). Given that the Court has granted Plaintiff jurisdictional discovery which includes the question of whether or not TFE's subsidiaries are merely its "alter ego," the Court shall deny without prejudice TFE's motion, allowing Plaintiff to pursue its jurisdictional discovery which will also suffice to answer the question of whether or not it failed to state a claim upon which relief may be granted.

### III: CONCLUSION

After reviewing Defendant's Motion to Dismiss, Plaintiff's Opposition and Cross–Motion, Defendant's and Plaintiff's Reply, the submitted documents, and the relevant law, the Court shall deny without prejudice Defendant's Motion and grant Plaintiff's Cross–Motion for Jurisdictional Discovery. An appropriate order accompanies this Memorandum Opinion.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is, this 5 day of June, 2003, hereby

**ORDERED** that Defendant Total Fina Elf S.A.'s Motion to Dismiss [26] is DENIED WITHOUT PREJUDICE; it is further

**ORDERED** that Plaintiff's Cross–Motion for Leave to Take Jurisdictional Discovery [39] is GRANTED; and it is further

**ORDERED** that jurisdictional discovery will end no later than August 22, 2003, and Total Fina Elf S.A. shall file its response to Plaintiff's complaint no later than September 5, 2003.

**SO ORDERED.**